UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

      NICHOLAS P. SIMERSON,          Case No. 08-21681-dob
                                            Chapter 7 Proceeding
          Debtor.                   Hon. Daniel S. Opperman
_____/
BETH BAKER, Guardian of David Baker,
an incapacitated individual,

          Plaintiff,

v.                                    Adversary Proceeding
                                        Case No. 08-2107-dob
NICHOLAS P. SIMERSON,

          Defendant.
_____/

## OPINION

Plaintiff, Beth Baker, as Guardian for her son, David Baker, filed the instant adversary proceeding seeking a determination that the obligation owed to her son by Defendant, Nicholas P. Simerson (the "Debtor"), is a nondischargeable debt under 11 U.S.C. § 523(a)(6). The Court conducted a trial in this matter on May 18, 2009. At the conclusion of proofs, the parties requested the right to file briefs. After consideration of the briefs and pleadings filed by the parties in this case, the Court finds that the debt is dischargeable and that Plaintiff is not entitled to a judgment under 11 U.S.C. § 523(a)(6).

## Jurisdiction

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E.D. Mich. LR 83.50(a). This is a core proceeding under 28

1

U.S.C. § 157(b)(2)(I).

## Findings of Fact

David Baker, a minor, was injured in a motor vehicle/pedestrian accident that occurred on June 10, 2004. Debtor was traveling southbound on Michigan Avenue when he struck David Baker who was crossing the street to retrieve mail for his employer, ABO Tents. Mr. Baker was crossing the street from west to east or, from the Debtor's perspective, from right to left. Debtor's car struck Mr. Baker on the driver's side front panel and catapulted him to the other side of Michigan Avenue. Plaintiff suffered significant and permanent physical injuries. At the time of the accident, Debtor did not have in place automobile liability insurance.

Although these are the basic facts agreed to by the parties, a number of witnesses testified. The Court summarizes the testimony of each of these witnesses as follows:

A.     Debtor, Nicholas Simerson

Debtor testified that he was driving southbound on Michigan Avenue at 50 mph in a zone posted at 45 mph. Carrie Adamczyk was in the passenger's seat and was applying makeup, using a cosmetic compact that had a mirror in its cover. The Debtor testified that he did not see Mr. Baker until he "blinked" and then saw Mr. Baker being struck by the driver's side of his car. The Debtor further testified that he slowed down, braked, and then pulled off to the side of the road. Debtor testified that he did not immediately brake because his three year old son was in the backseat and he was concerned that a car following him would have struck his car if he stopped suddenly. The Debtor testified that he stopped approximately 100 to 150 feet from the accident scene, got out of his car immediately, called 911, then ran to Mr. Baker. Debtor testified that he did not have insurance on the automobile because he was not receiving regular paychecks from his employer,

2

despite working regular hours for that employer. The Debtor, however, admitted that he told the police investigators at the accident scene that he had insurance.

B.    <u>Carrie Adamczyk</u>

Ms. Adamczyk testified that she was a passenger in the Debtor's car and was applying her makeup by using the mirror in her compact while the Debtor was driving southbound on Michigan Avenue. She did not see Mr. Baker and did not know that the Debtor's car had struck him until she heard a thud and the Debtor told her that he had hit Mr. Baker. According to Ms. Adamczyk, the Debtor immediately stopped the car and was out of the car by the time she was able to close her compact.

C.    <u>Joshua Noah</u>

Mr. Noah testified that he worked with Mr. Baker at ABO Tents. Mr. Noah and Mr. Baker were cleaning tents that day when Mr. Baker was told by his mother, who worked at ABO Tents, that he should go get the mail from the mailbox that was across the street. Mr. Noah testified that he watched Mr. Baker walk to the side of the street barefoot and was talking to Mr. Baker until the two of them were out of ear shot. Mr. Noah saw Mr. Baker standing on the side of the road and then he returned to his tent cleaning duties. Approximately 15 to 30 seconds later, Mr. Noah realized that Mr. Baker had been hit because he heard the impact. Mr. Noah did not actually see the Debtor's car hit Mr. Baker, but saw Mr. Baker lying on the side of the road. By that time, Mr. Noah testified that there was at least one person on the scene attending to Mr. Baker. Mr. Noah also testified that he saw the Debtor stop his car approximately 150 yards away from the accident scene and then get out of his car and casually walk to Mr. Baker. Mr. Noah then stayed in the ABO Tents office answering phones while Mr. Baker's mother attended to her son. Somewhat later, Mr. Noah returned to his

3

tent cleaning duties.  At no time was Mr. Noah interviewed by any law enforcement official.

D.     Melissa Goodell

Ms. Goodell is the wife of Thomas Goodell, the owner of ABO Tents.  Ms. Goodell is the aunt of Mr. Baker and was at home when the accident occurred.  She immediately drove to ABO Tents and had to park her motor vehicle far from ABO Tents because emergency vehicles blocked entrance to the accident scene.  Ms. Goodell testified that she heard the Debtor refer to her nephew in a derogatory manner, but was rebuffed by law enforcement officials when she wanted to report what she heard.  The Debtor testified that Ms. Goodell flashed an obscene hand gesture his way at the accident scene and also denied saying anything to Ms. Goodell because he was prohibited from being near his car when he supposedly referred to her nephew.  Ms. Goodell testified that she also followed the ambulance carrying Mr. Baker to the hospital.

E.     Thomas Bereza

Mr. Bereza was qualified as an expert witness by virtue of his extensive experience with the Michigan State Police both conducting accident investigations and training officers in that area. Since 1986, Mr. Bereza has been retained for his opinions regarding accident reconstructions and investigations.

Mr. Bereza testified that the instant accident would not have occurred had the Debtor been driving the posted speed limit and been on the necessary look out for pedestrians.  Mr. Bereza ruled out any adverse road conditions or weather conditions for the accident and further noted that there were no visual obstructions to the area around the accident scene.

Mr. Bereza also testified that there was sufficient evidence to find intentional willful acts by the Debtor by virtue of the excessive speed that he was driving coupled with two speeding tickets

that the Debtor received a few months before the June, 2004, accident. Most notably, in Mr.

Bereza's mind, was the speeding citation for excessive speed in a neighborhood. Moreover, Mr.

Bereza testified that the Debtor's inconsistent statements regarding insurance and the accident, as

well as his derogatory remarks regarding the Plaintiff after the accident, caused him to opine that

the Debtor acted in an intentional and willful way.

Analysis

The United States Supreme Court has held that a willful and malicious injury as stated in 11

U.S.C. § 523(a)(6) means the following:

> [T]he word "willful" in (a)(6) modifies the word "injury," indicating that
> nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate
> or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting
> from unintentionally inflicted injuries, it might have described instead "willful acts
> that cause injury." Or, Congress might have selected an additional word or words,
> i.e., "reckless" or "negligent," to modify "injury." . . . [T]he (a)(6) formulation
> triggers in the lawyer's mind the category "intentional torts," as distinguished from
> negligent or reckless torts. Intentional torts generally require that the actor intend
> "the *consequences of an act," not simply "the act itself*."

*Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (citations omitted).

In rejecting an argument advanced by Plaintiff that an intentional act is all that is needed, the

Supreme Court stated that such a reading would be too broad and would:

> place within the excepted category a wide range of situations in which an act is
> intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by
> the debtor. . . . A "knowing breach of contract" could also qualify. A construction
> so broad would be incompatible with the 'well-known guide that exceptions to
> discharge "should be confined to those plainly expressed.

*Id*. at 62 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

Likewise, the Sixth Circuit in the case of *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d

455 (6th Cir. 1999) has directed this Court to examine the record to determine if there is an

5

intentional act, as well as a desire to inflict injury or an action that is substantially certain to result in injury. Under *Markowitz*, this Court is required to determine that a debt is not excepted from discharge unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it[.]' *Id.* at 464.

In addition to proving a willful injury, a party must also prove that the debtor committed a malicious injury. "'Malicious' means a conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citing *Tinker v. Colwell*, 193 U.S. 473, 486 (1904)). If a party fails to prove a willful or malicious injury, the debt will be discharged. *Markowitz*, 190 F.3d at 463. Inferences can be made, however, if the circumstances surrounding the alleged injury warrant such.

> Determining whether a debtor acted both willfully and maliciously for purposes of § 523(a)(6) requires an examination of that person's state of mind. A debtor will rarely, if ever, admit to acting in a willful and malicious manner . . . [but] both requirements can be inferred through the circumstances surrounding the [involved] injury.

*O'Brien v. Sintobin*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000).

Applying the above rules to the instant case, the Court finds that the Debtor was clearly negligent in the operation of his motor vehicle on June 10, 2004. There is no question that the Debtor's motor vehicle struck Mr. Baker and would have not done so had he been driving at the speed limit. That being said, however, there is no evidence before the Court to find that Debtor had the requisite intent to harm anyone, much less Mr. Baker. By way of example, no witness testified that there was any previous relationship between the Debtor or any members of Mr. Baker's family. While it is true that the Debtor obviously intended to drive his motor vehicle, and even arguably intended to drive faster than the posted speed limit, that intent alone is not sufficient to rise to a

willful and malicious injury under 11 U.S.C. § 523(a)(6).

Plaintiff also argues that the failure to have sufficient insurance is additional indicia of the requisite intent under § 523(a)(6). Again, the Court notes that this is a definite violation of Michigan's Motor Vehicle Code and is not a good practice for reasons abundantly shown in this case. If the Debtor had automobile insurance, his assets would have been protected to a certain extent and he would not have had to file this Chapter 7 bankruptcy petition. Likewise, Mr. Baker would have received compensation for his significant and permanent injuries, including the medical bills resulting from those injuries.

Again, however, the lack of insurance alone is not sufficient to prove the requisite intent. In cases similar to the instant case, courts have held that operating a vehicle without insurance does not rise to the standard of willful and malicious conduct or injury as required by 11 U.S.C. § 523(a)(6). *Westfall v. Glass* (*In re Glass*), 207 B.R. 850, 854 (Bankr. E.D. Mich. 1997) (agreeing with and adopting the "majority viewpoint . . . that the act of driving without liability insurance is not willful and malicious behavior"); *LSI Financial Group v. Perry* (*In re Perry*), 166 B.R. 319, 321 (Bankr. M.D. Tenn. 1994) (finding that debtor's actions of failing to renew her auto insurance and driving her car without insurance were not willful and malicious under 11 U.S.C. § 523(a)(6)).

As to Mr. Bereza's opinions, while the Court respects his opinions as an expert in accident investigation and reconstruction, his opinions alone do not determine whether a debt is excepted from discharge under 11 U.S.C. § 523(a)(6). Moreover, the Court notes that the evidence given by Mr. Bereza may indeed be sufficient for various civil and criminal actions in Michigan, but that these standards are much different than the standard imposed by 11 U.S.C. § 523(a)(6) as articulated by the Supreme Court and the Sixth Circuit. Moreover, Mr. Bereza's opinions did not meet the legal

7

standards as set forth in *Kawaauhau* and *Markowitz*.

Finally, the Court does feel compelled to comment briefly on the less than flattering testimony given by various witnesses in this case. While distressing and certainly inappropriate, if true, all of the accusations leveled against the Debtor do not, either taken on their own, or added to the known and agreed facts in this case, elevate this case to one that warrants a finding that the obligation owed by the Debtor to Plaintiff is excepted from discharge. The Court does not come to the conclusion that the debt owed by the Debtor is dischargeable and covered by his discharge very lightly. If the Court had the power to hold that the Debtor had adequate insurance coverage, the Court would do so. That is not the issue before the Court, instead the issue is whether the Debtor acted in such an intentional and willful manner as to deny him discharge of this obligation under the parameters set by Congress and articulated by the Supreme Court and the Sixth Circuit Court of Appeals. This Court determines that the Debtor's actions, and inactions taken either individually or collectively, do not meet the requisite standard under 11 U.S.C. § 523(a)(6), so his obligation owed to the Plaintiff in this case is discharged.

Conclusion

For the reasons stated in this Opinion, the Court determines that the Plaintiff is not entitled to a judgment under 11 U.S.C. § 523(a)(6) and that the obligation of the Debtor, Nicholas Simerson, to Plaintiff, Beth Baker, as Guardian of David Baker, is discharged. The Court will enter an Order consistent with this Opinion.

**Signed on October 27, 2009**

                                        **/s/ Daniel S. Opperman**
                                _____
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**

8